IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PHILLIP ALEXANDER STEED                                              PLAINTIFF

v.                              Case No.: 07-5058

CORPORAL TOMLAN;
LORRIE BIRD, jail nurse;
and HUNTER PETRAY                                                    DEFENDANTS

REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Phillips Alexander Steed (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on April 3, 2007. (Doc. 1). Plaintiff's Complaint was filed *in forma pauperis* (IFP) and certified to proceed on that same date. (Docs. 2, 3). The undersigned held an evidentiary hearing on June 30, 2009, regarding Plaintiff's claims of denial of medical care and excessive force. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable Chief Judge Jimm Larry Hendren for the purpose of issuing a report and recommendation. Accordingly, the Court issues this Report and Recommendation.

**I.  Background and Witnesses Presented**

At the evidentiary hearing I heard testimony from the following witnesses in the following order: (1) Phillip Steed, (2) Lorie Bird, (3) Hunter Petray, (4) Charles Tomlin and (5) Paul Carter.

A.  Phillip Steed

My name is Phillip Steed and at the end of March 2006, I was an inmate in the Benton County Jail.

At the time in question, Cpl. Tomlin entered D-109, where I was housed, and began searching inmate items.

Tomlin found some inmate items which were not allowed in the cells, and were punishable by time in the hole. When he reached my bunk, he stated I had extra paper, and for me to go to lockdown. I then gathered my belongings to go to lockdown.

-1-

I heard inmates chanting and I joined in with them. At that time I was hit in the neck and back and fell face-first. I was taken to lockdown. I was given no warnings, I was not seen by a nurse at that point and I was not seen by a doctor.

I have testified in previous Section 1983 cases for other inmates regarding excessive force, but I don't remember the name of those plaintiffs.

I was permitted to call witnesses at this hearing, but I did not call any witnesses.

March 25, 2006 at about 3:35 pm seems an accurate date and time for this incident.

I was booked into the facility on March 22, 2006 and I was released at 6:00 p.m. on March 26, 2006. This was possibly my third incarceration and the incident happened about one day before I was released.

I have no copies of medical requests and no requests regarding my physical injuries. However, Plaintiff's exhibit 9 is a medical request made on March 26, which may be related to the incident.

I know the difference between a medical request and a grievance and I have submitted both while at Benton County. There is no grievance regarding the Tomlin issue.

I remember pretty well the incident at issue.

I was incarcerated for failure to pay fines. I was arrested 3-4 times in the five (5) day period after this incident.

After the incident with Tomlin, I had pain when Tomlin straightened my arm out, but I have had an arm injury for a long time. I also had mental anguish, I couldn't sleep and my arm was shaking uncontrollably.

I have had a history of dependence and use of illegal substances. I had been taking several illegal drugs prior to my arrest and incarceration.

I may have had extra paper at the time of the shakedown on March 26, but I did not have anything to hide.

I did make a request on March 22, 2006 to be placed in protective custody, but I disagreed with being

taken to segregation on March 26, 2006. I was not swinging my mat and bedroll and I was not given any orders, including orders to stop.

My complaint against Defendant Bird is that I was not given proper medical care. I was never seen after being hit in the head. After the incident with Tomlin I was released and never spoke with her.

When I was placed in lockdown I was allowed three (3) grievances, three (3) requests, three (3) medical forms per day and no more. I submitted requests although they are not reflected in the records.

I did see Defendant Bird on March 22 or 23, 2006.

On the date of the incident with Defendant Tomlin, I also had another incident about 10:45 p.m. I said I would commit suicide and slammed head in bookshelf. I was taken to a suicide cell. The deputies had to take me to the ground after I rammed my head at a bookshelf.

I made no medical requests regarding this incident, although I was allowed three requests a day.

I bonded our the next day, and my parents drove me home. I called an ambulance, but a police officer gave me a ride to the hospital.

I was arrested again on March 27, 2006. I also went to the emergency room on this day. I did not purchase any drugs. I left the emergency room and was to go to my family doctor. I walked to my family doctor after I left the hospital. I waited to see the doctor that morning.

I refused an x-ray while at the hospital and I did ask for narcotics on March 30, 2006when seeing a physician.

On March 31, 2006, I was arrested for burglary and aggravated assault for using threatening my parents with a knife.

I was diagnosed with cerebral palsy at age three. I attended the Shriner's hospital at this time. I can not bend my toes, my left arm is in constant contraction, and I can not straighten it. I later learned I likely had a stroke at birth, rather than cerebral palsy.

I saw the doctor on January 7, 2008 and the x-ray taken was perfect, with no loose bodies.

I also went to the doctor in 2008, and was found to be within five degrees of full arm extension.

After I left the Benton County Jail in March of 2006, I called an ambulance. However, it was very expensive, and a police officer offered to take me to the hospital. This was at about 4:00 a.m.

B.  Lorie Bird

Defendants' exhibit two is the medical record of Plaintiff. It is his full medical record and it shows no medications.

I worked at the Benton County Jail for seven days through a temp agency. My signature and initials appear on Defendants' exhibit two.

Plaintiff wanted to be placed on lockdown due to his cerebral palsy. I noted there was "nothing for the nurse."

I was never aware Plaintiff suffered any injuries from a guard or other jail personnel.

The process for medical care is that the inmates will fill out requests and go through requests to see who can get into the doctor when he arrives. The inmates are not shy, and often submit multiple requests. However, Plaintiff did not make multiple requests.

Plaintiff came to see me because he filled out a medical request.

On the medical request dated March 22, there is a place to write a response, but I did not write in it. I did not change it from a medical request to a grievance. I did not write "stay where @," but I did sign my name on the form.

I would have seen Plaintiff first, and then he would have seen the doctor if there was any reason. I saw no medical reason for Plaintiff to see the doctor.

I do not know of any medical request Plaintiff made after March 23, 2006.

C.  Hunter Petray

Medical forms are returned to inmates after they are seen by the nurse.

Inmates in D-109 are to keep all personal items in their bunk. There is no cubby for personal items.

Guards and jailers have an obligation to turn in requests and grievances of the inmates. Any staff member who did not do this would be subject to discipline.

If a medical request is submitted, it is the medical staff who determines whether or when to see an individual.

### D. Corporal Tomlin

At approximately 15:35 on March 25, 2006, I was in pod control looking into D109. I saw Plaintiff throwing a bed roll and a mat. I took this as a threat and pushed him to the floor.

I also found extra pens and paper in D109. The paper and pencils were underneath the mat, not on top of the bed where they were supposed to be kept. An inmate was to leave the toothpaste and other personal items in plain view above the mat, and if this was not done the inmate could be sent to lockdown.

The throwing of the bedroll was the reason for lockdown. If an inmate has extra items, we may take the extra items. In this instance, the inmate continued to keep swinging the bedroll and mat and not listen to deputies.

Defendant's exhibit 3 says lockdown was given for hiding objects from jail staff. Concealing items is a class C offense. Disobeying orders is a higher offense, so he was sent to lockdown for the lesser offense rather than both offenses.

I don't know how long it was from the time Plaintiff was told to gather his items to the time force was used. I placed Plaintiff on the floor. Officer Baker placed the cuffs on Plaintiff and escorted him out.

When Plaintiff was swinging his arm, I took his arm and placed him on the floor. I did not hit Plaintiff in his neck or head. I wouldn't touch an inmate unless there was a threat present, and my reaction was related to the threat displayed. I or other staff could have been knocked out with the mat, and it was unknown what was in the mat.

I grabbed Plaintiff's wrist and used a straight arm-bar take down.

I have no independent recollection, I do not remember the Plaintiff. However, my report, which is

Defendants' exhibit three, is a true and accurate record of what took place. I would have noted if there was any injury to the inmate, and I did not make any notes indicating injury.

There was no grievance or medical request regarding the injury or incident.

I don't know if we did any cell checks on the day of the incident in question. As part of my duties, I did pod checks at times.

After the incident with Plaintiff, there was no visible injury. Additionally, no injury was noted by any other staff person. If there had been an injury, it would have been reported.

### E.  Paul Carter

I am a custodian of the records. I have reviewed Defendants exhibits numbered one through four and they were regularly kept.

There are no medical records relating to March 25, 2006 and the Plaintiff.

I was the reviewing officer who signed and dated Plaintiff's exhibit number seven (7). Plaintiff was released on the date of this report. Plaintiff stated he had nothing to say.

## II. Discussion

### A.  Excessive Force

Plaintiff contends the force used against him on March 26, 2006 by Defendant Tomlin was excessive. He states he was hit in the head by Defendant Tomlin, who also straightened out his arm. Plaintiff states he was not swinging a mat or engaging in aggressive behavior, rather he was chanting along with other inmates. Plaintiff also alleges he was not told to be quiet or given other orders. Plaintiff further stated he is on medication and seeing a doctor for treatment of his arm. An incident report states the Plaintiff was disciplined to lockdown for concealing materials from jail staff. As Plaintiff was being escorted to pod control for lockdown, Plaintiff was swinging his mat and bedroll around. He was told to quit swinging his arms. Plaintiff did not comply and was placed on the floor and handcuffed.

The only evidence presented at hearing which indicated Plaintiff was hit on his head was Plaintiff's

own testimony. There is no record Plaintiff complained of any resulting head problems, and in fact admitted to later that same night "butting" his head against a book shelf. The medical evidence presented by Plaintiff shows he has within 5 degrees of a full range of motion on his arm. There is no evidence on the record to demonstrate that Defendant Tomlin knew or should have known about prior injuries to Plaintiff's arm or Plaintiff's limited arm use. The evidence supports the finding that a standard hold was applied to Plaintiff to put him on the floor when he did not comply with orders to stop swinging his mat. There is no evidence Defendant Tomlin could or should have known such a hold would cause Plaintiff any pain because of previous injuries.

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, regardless of whether an inmate suffers serious injury as a result. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). However, " Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it." *Askew v. Millard,* 191 F.3d 953, 958 (8th Cir.1999) (citing *Harberthur v. City of Raymore,* 119 F.3d 720, 723 (8th Cir.1997)). Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 9. In excessive force cases, it must be "determined whether the force was applied 'in a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm.' " *Estate of Davis v. Delo,* 115 F.3d 1388, 1394 (8th Cir.1997) (quoting *Hudson,* 503 U.S. at 6). Factors for consideration in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. *Hudson,* 503 U.S. at 7.

There was no credible evidence presented at the hearing to show the force used was excessive. In fact, the force at issue was a straight arm bar take down, a very minimal use of force where Defendant Tomlin simply put the Plaintiff on to the floor to secure him. Plaintiff's only complaint about this force being

"excessive" was due to injury to his arm which Defendant Tomlin could not foresee. Additionally, although Plaintiff stated he was hit on the head or neck, he refused an x-ray because he did not think it would be useful. Accordingly, there is no evidence of excessive force by Defendant Tomlin and I recommend Plaintiff's Complaint regarding excessive force be dismissed.

### B.  Denial of Medical Care

Plaintiff also claims he was not given any medical care for his arm pain after force was used against him. However, there was no evidence presented at trial that Plaintiff had sought medical care after the incident.

"Deliberate indifference to a prisoner's serious medical needs violates the prisoner's Eighth Amendment right to be free from cruel and unusual punishment." *Warren v. Fanning,* 950 F.2d 1370, 1373 (8th Cir. 1991) (citing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)). To establish such a claim, a prisoner must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (alteration added). "A medical need is serious if it is 'obvious to the layperson or supported by medical evidence, like a physician's diagnosis.' " *Moore v. Jackson,* 123 F.3d 1082, 1086 (8th Cir. 1997) (quoting *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995)). A prison official is culpable for deliberate indifference to that serious medical need if the official is "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually draws that inference. *Bender v. Regier,* 385 F.3d 1133, 1137 (8th Cir. 2004); *see also Cook v. Pueppke,* 421 F. Supp.2d 1201, 1205 (E.D. Mo. 2006).

There was no evidence Plaintiff appeared to need medical care, nor that he requested medical care either orally or in writing. The evidence clearly showed that Defendant Bird did not know Plaintiff needed any medical care on the day in question, and she did not refuse him care in any manner. To the contrary, the testimony was that had Plaintiff put in a medical request, he would have been seen by the nurse. On March 23, 2006, this procedure had been in place when Plaintiff was seen after submitting a request, although there was "nothing for the nurse" to do regarding Plaintiff's request. As such, there exists no evidence Defendants

were deliberately indifferent to Plaintiff's need for medical care, did such a need exist and Plaintiff's Complaint claiming he was denied medical care should be dismissed.

### III.  Conclusion

For the reasons stated above, it is my recommendation that Plaintiff's Complaint (Doc. 1) be DISMISSED in its entirety.  **The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**IT IS SO ORDERED** this **2nd day of October 2009.**

                                            */s/ J. Marschewski*
                                              HON. JAMES R. MARSCHEWSKI
                                              UNITED STATES MAGISTRATE JUDGE